May it please the Court. I'd like to start by thanking the Court for indulging my medical situation, my biking mishap and rescheduling. I know it's not easy to do that. There's at least one member of the panel who's particularly receptive to biking mishaps. And my wife is clearly not on this panel, otherwise I wouldn't be able to say that. This case is about a decade-long nationwide fraud scheme. In all its briefs before this Court, J-M minimizes the seriousness of the fraud that was found by the first jury. But after hearing all the evidence in two trials, the District Court responded to that same tactic by explaining that the fraud quote, spanned roughly a decade and potentially impacted a huge swath of the country, including critical infrastructure and water systems. Those were the District Court's words. Now, we believe that we have satisfied our burden in this Court to show that when the evidence is viewed in our favor, that a reasonable jury could have awarded substantial damages as a result of that massive fraud. But we start with penalties. And here's why. As Judge Easterbrook said in the main case in the Seventh Circuit, the False Claims Act provides for penalties even if, indeed especially if, the actual loss is hard to quantify. Or even if it's zero. Or even if it's zero. And so this case, in light of the Court's determination, and clearly the District Court felt that the damages were hard to quantify, that's all the more reason to award full penalties. So that's why I'm going to start my presentation with penalties. Because the penalties part of your case, I guess, breaks down into two things. One is, should you have been awarded penalties? And the second is, in what amount? And let's assume that you met the burden to be awarded penalties. As I understand it, the District Court awarded them per project, in effect. Correct? That's correct. You argued below, I think, that you were entitled to them per invoice. But that's not an argument you make on appeal. Am I correct? Your Honor, we did not argue that below. Okay. You're not arguing at all that you're entitled to penalties per invoice. Correct? That's correct. You're arguing per stick. Yes. Per stamp. Well, per stamp. And each stick has a stamp. You wouldn't be arguing for three if there were three stamps on it. That's right. We would not be. It wouldn't be material. Okay. Here's my difficulty with the stick. And I want you to try to respond to it for me. We don't know whether the representation on any particular stick was false, do we? Yes, we do, Your Honor, and I can explain why. Well, I'd like to hear that explanation. Yes. The representation on the pipe is a representation, and the District Court articulated the theory of the case this way as well. Actually, I think you misdescribed what the Phase I jury found and what the District Court said what the Phase I jury found. But tell me why you have any proof that as to any particular stick, the stamp that says UL 235 or whatever is false. That representation is a representation not about the particular piece of pipe and how strong it is. It is a representation about the process that is used to make that pipe. And it's an assurance that all the pipe, including this piece, was made in accordance with that process. So let me explain that a little further. No, I understand that argument, and that's your basic theory of liability. And let's assume for the moment that I agree with the District Court that there were material misrepresentations that were made with Sienter. But the misrepresentation that the Phase I jury was asked to find, which is that all of our pipe or we can represent to you that all of our pipe meets these specifications. Obviously, there may be an occasional piece that doesn't. The difficulty on the individual pieces of pipe is that I'm not sure that there's any proof that that particular piece of pipe doesn't meet specifications. Am I right, at least in that factual assumption? Yes, Your Honor, but I don't think that's our theory. And I don't think it's the theory of the tribe. Well, I'm not sure what your theory is. My question is, in the absence of that representation on that particular stick of pipe being incorrect, which is to say that it is UL 235 compliant, how can you get a penalty for each piece of pipe? Because the evidence below, Your Honor, was that that representation, that stamp, doesn't mean this particular pipe meets a particular strength standard. It's a representation that this pipe was made in accordance with manufacturing and testing processes that are compliant with the industry standards. Okay, so let's accept your representation for a moment. Can you show that any particular piece of pipe was not made through processes and testing standards? I know you can show that some of the pipe that they produced during this period doesn't. But can you show that this particular piece of pipe doesn't meet either the manufacturing or testing standards? We showed that their entire manufacturing process was noncompliant. It's like the Campy case. In that case, there were pills that weren't made at factories that had been approved by the FDA. And so the defendant said, well, you can't show that any particular pill is bad. Now, that goes to damages. I understand the difficulty on damages, which I hope you'll get to, but I'm still trying to figure out if you think the representation on a particular piece of pipe is what gives rise to the penalty. Yes, Your Honor. Whether you can show, you may not think it's important, but I just want to know factually. Oh, no. You can't show that any particular piece of pipe was not manufactured in accordance with standards or tested. No, Your Honor, we can because there was no pipe they made during this period of time that was manufactured in accordance because, and here's why. I didn't think that's what the record does. Doesn't the record demonstrate that at some point in time, they were no longer confident that their pipe met the standards, but I don't think the record shows that there was no piece of pipe made during this period. Am I wrong about that? Your Honor, I think that what the record shows is, look, let me go back for one moment. Well, no, tell me what the record shows. Does the record show that during the relevant time period, none of the pipe that they manufactured met standards? The record shows that during the relevant damage period, their whole manufacturing process was noncompliant, and therefore all the pipe that was made by that process was noncompliant. And that's how we tried the case. You have to understand it's the way the honor system worked. You went in, you showed the testing agency, hey, we just made our first batch of pipe, we tested it, it passed. They said fine, but the rule is you cannot change your manufacturing process in a way that degrades that pipe and still put our mark on there. And that's what they did. They changed their manufacturing process. Let me just say, I want to be clear. Let's assume for purposes of discussion that the pipe that you got was, in fact, met all the standards for UL 235. They changed their process, but nonetheless, had they tested it, it would have met all the standards. Would you be entitled to a penalty for a stick of pipe that met all the standards? Well, yes, Your Honor, because the misrepresentation would still be there because the representation is assurance. We are assuring you, and this is what the district court articulated as well as our theory, we are assuring you that we make all our pipes in the right way. The reason I'm pushing back on you on that is what I read the district court saying is that your representations at the time they decided to purchase the pipe were of that nature, which is to say our pipe meets UL 235 as an example, uses UL 235 standards. We've manufactured it and tested it in accordance with that. I understand that theory of the case, and I understand that's why I think you've probably shown liability, if you will. My question is a different one. In order to collect on each stick of pipe, you have to show that there was a misrepresentation on that stick of pipe. And the only representation I see on that stick of pipe is the stamp UL 235. So if that stick of pipe, in fact, meets UL 235 standards, why is there a misrepresentation on that stick of pipe as opposed to their broader misrepresentation? Let me read what the district court's words were in describing our theory. The defendant's manufacturing process changed over time such that there was no assurance, and I want to focus on that word assurance, that the pipe being produced had the same strength and durability of the pipe initially tested. Now, no person on this planet can tell you if that pipe 12 feet under the street does or does not pass UL 1285. And the whole reason for this regime is that no one has to do that. No one can force you to come into court. If you show that they didn't follow that process, then you don't have the assurance. And it's like the – Now, with respect, it seems that we're missing each other here. I'm buying your theory of liability for purposes of this question. What I'm trying to figure out is whether or not there was a separate violation of the State False Claims Acts with respect to every stick of pipe. I understand. I'd understand an invoice argument, but you're not making it. We're not making an invoice argument. You're not making an invoice argument. I understand the project argument that the district court bought. But what I'm having difficulty is figuring out why each of those individual sticks is a misrepresentation as opposed to the broader representation that everything we're going to sell you has been tested and meets standards. It's for the same reason the jury was able to find that JM made false statements to them because in every project, and the reason is that it's the assurance that is false. In other words, the assurance itself, it's kind of like the Compton case, the brake shoe case in the Sixth Circuit, where the court said, look, the government didn't just bargain for strong brake shoes because some of the brake shoes were fine, as it turned out. But they said each claim is false because they bargained for the assurance that comes, the confidence that comes with a quality program. Did they get a penalty on every brake shoe in that case? I believe everyone was considered a false claim. So that would be the same thing. Presumably each one gave rise to a penalty. Did they get a penalty on every brake shoe? See, it actually showed damages in that case, did they not? Well, but the question before the court was, is each claim a false claim? Because the defendant said, well, look, some of these brake shoes were fine. And the court said, no, each one is a false claim. And so each one would have given rise. The issue of penalties wasn't in the opinion. Yeah, I didn't read that case as dealing with the issue of penalties. But the theory of liability is very analogous because the idea is each piece said, you can be assured this piece of pipe was made in accordance with these processes because the regime doesn't work otherwise. The regime doesn't work if you can say, well, I complied because some of my pipe is fine. But then you're in a lottery. That's the problem is it's a lottery situation. Because the statute provides two types of remedies. So there's the penalty for making the false representation that you can recover, whether it's per project or per stick, even if you can't show actual damages. And then there's actual damages, which can be troubled. So it seems as if the statute already accounts for what you're discussing, where you can't really show actual damages, but you could still penalize the wrongdoer and still recover, albeit typically in a lesser amount. So I don't see why that means you have to get penalties per stick if you can show a misrepresentation. Because it's each stick falsely representing the assurance that I'm referring to. Okay, so that's another. I'm sorry to interrupt you. I want you to be able to answer. But that strikes me as almost emotional distress damages, as if there's a contract remedy that you're not certain about the product that you purchased, even if the product has worked for over a decade. So you can't show a failure, but you don't feel comfortable. So I'm not sure how that becomes a contract remedy. It's not, Your Honor. But this statute is designed to protect the integrity of the government procurement process. And this court has said many occasions that the harm that flows flows from defrauding the government, even if there's no other harm besides that. And here the government was defrauded. Each time they looked for these stamps on the pipe. The evidence below was that their inspectors would look at each piece of pipe to see if the stamp was on there. And if it was not, they would reject the pipe and not pay for it. The reason is they want the assurance that this pipe was made in accordance with these processes. The industry standards don't say each. I mean, it's not even practical to say each piece of pipe has to be a certain strength because no one is ever going to know that. The only way the regime works is if they represent this is our manufacturing process. You can be assured, not for perfection, because, of course, you know, we may have a process that complies that produces some pieces that are bad. That's just human error. But what we can be confident is each time we tell you this pipe is made in accordance with this process, we're telling you the truth. Okay. But then let me come back. And I know you want to have time to deal with actual damages. I was going to say, I'm getting close to my limit here, but obviously I want to answer the Court's questions. You can appeal to the mercy of the presiding judge on that. All right. But I'm still not sure I understand how this matches up with the record. And so I need you to help me on this. As I read the record, it is not clear that every piece of pipe manufactured during this period either was not manufactured according to the standards or was not tested and shown. It was just that there was a substantial amount of pipe manufactured during this period that wasn't manufactured according to the standards or was willing to pass the test. So I ask again, with respect to any specific piece of pipe, isn't it entirely possible that their representation on that specific piece of pipe was accurate? At a minimum, Your Honor, there's a factual question here. I can point to evidence that I think does support that position. No, I guess not. If you have to show that on this piece of pipe the representation is inaccurate, which is to say this piece of pipe was not manufactured according to the specifications or would meet the testing, can you show that as to any specific piece of pipe? I think we can show that every piece of pipe made during this window was nonconforming. Everything? Yes, because none of it was made in accordance with the industry processes. I keep asking that. Does the record really show that? I was going to say, to what extent can we take into account the fact that none of the pipe, at least at the time of the trial, was shown to be defective except for what JM replaced on its own? Yes, they replaced the pipe in Reno, but the pipe has a 100-year expected lifetime. And at the time, the pipe that was there was between about 12 and 23 years old. So it was less than a quarter of into its lifetime. And again, the issue is whether or not they were telling the truth when they gave the assurance that their manufacturing was done in a certain fashion. And we showed that virtually every plant was noncompliant with that assurance. We had a map. It's in the record. No, I see. But again, this is important. I'm going to ask your friend about this, too. I don't read the record as showing that they were noncompliant during the entire period. Am I wrong about that? I think that's the way to interpret the jury's verdict. No, no, don't tell me what the jury says. Tell me what evidence there is. The evidence we showed throughout the period of time that they were noncompliant, and we picked different plants at different points in time. During the entire relevant period? Well, because it was a top-down scheme. No, just answer my question. You think the record demonstrates that during the entire relevant period, all the time that the statute of limitations covers, they were noncompliant with respect to all the pipe they manufactured? Yes, because they had changed their processes based on top-down directives from management. They had changed their processes so that it no longer... During the entire... I'm missing the part of the question that's important to me. During the entire period? Yes, during the entire period of time. The record shows that, you think? Yes, the record does show that, particularly when it's viewed in a light most favorable to us, which it must be on this appeal. And the record shows that they were never... There was one witness who testified, and this alone is sufficient evidence. He said, the whole time, we were never able to comply with UL. And he'd been there forever. And he said, we were never able to comply with UL. And so the process was never compliant, and that's why the jury had no trouble over a 10-year period where you couldn't pull the pipe out of the ground and show the jury, here's a pipe that's good or here's a pipe that's bad. The jury found on every one of the 26 projects over a decade, each one, JM misrepresented its manufacturing and testing process. How could the jury have found that if we hadn't heard? Because it could have found that you misrepresented it once or twice or at some point during the period. The Phase I jury was not asked to find whether every piece of pipe produced was noncompliant. It was asked, pursuant to your theory, and I think I'll let the other side argue the opposite, but I think quite reasonably concluded that you made a representation that your pipe was manufactured and tested in a certain way. You knew that it wasn't true as to all of the pipe. That was material to their determination. But the Phase I jury never focused on the issue I'm asking you about now, which was there evidence that each piece of pipe was not manufactured and tested. There wasn't a way to differentiate the pipe. So if the jury had thought, well, sometimes it was good and sometimes it was bad, then a project in 1998 where they said this is bad, this is a false statement, and a project in 2003 where they said this is bad, this is a false statement, you could only arrive at that conclusion since there was no record of where was this pipe made and when was it made. No one had those records. The jury could only have concluded that, look, the whole time period they were noncompliant. That's the only way you can rationalize the verdict. But was there instruction to that effect? I think you're arguing an implication. I'm looking for, as my colleague is, for some clear determination that, as a matter of fact, the jury was presented with that question and made a finding. Well, the jury was given a standard False Claims Act jury instruction. But they had to go project by project, and they were told, you have to make a separate determination for each project. One project was in 1997. Another project was in 2002. Another project was in 2005. The necessary implication, since nobody could say, oh, on this project, this pipe came from this plant and it was made in this time period, because no one could do that, the only implication of the jury's verdict is that they just decided, they must have decided, that it is a whole time period. Your answer, Judge O'Scanlan's question is you're arguing by implication, not by actual finding. Well, certainly it's inference. We're only required to show by a preponderance of the evidence, and we cleared that hurdle. But, yes, there was no direct evidence. Like I said, nobody could trace the pipe to a particular plant. That was impossible. And so the question then becomes, how did the jury reach its verdict? And there's only one path. I'm having, I must say, great difficulty taking a jury verdict, which I think the trial judge quite accurately described, as simply based on the theory that, don't worry, everything we're doing is above board, to translate to particular pieces of pipe. Now, I don't think it makes any difference on liability, but you're asking for a penalty for each piece of pipe. And, therefore, it seems to me I'm having trouble translating the jury's verdict at Phase 1 to a finding that each piece of pipe contained a material misrepresentation. Well, Your Honor, now I fear I'm going down the path of repeating myself. Oh, you are. You are. I want you to understand my problem. No, I understand the difficulty you're having, and the only way I can deal with it is by addressing the implications of the jury's verdict, which are just as binding as the express findings of the jury, as the Acosta case in this circuit holds. And all I can say is you cannot understand or there's no way to make sense of this verdict unless you believe that the jury concluded that from one end of the statutory period to the other end, JM was noncompliant throughout the entire time. Their plants were noncompliant, because the jury had no other way to decide how can we know if a misrepresentation in 1997 was actually something that was false. I mean, the project ends in 1997. Nobody knew when that pipe was made. Nobody knew when that pipe was made, and no one really knew where the pipe came from. I mean, there are a few exceptions that are minor, but for the vast majority of the projects, you couldn't trace the pipe, and nobody tried to. Nobody in the trial made the argument that, I mean, JM certainly argued, well, you know, we might have been good, we might have been bad, but if you look at the jury's verdict, how could they have concluded on every one of those projects? Judge Beatty, if I may, just one other question on this. This brings up an argument that your friends have made, which I think I would find some merit to. Let's assume that you received – your theory is correct. You received pipe that performs absolutely as well as the pipe that you were promised. And this assumes a second part of the case, but just assume that for a moment. Your theory is that, nonetheless, you would be entitled to a statutory penalty for each piece of pipe. At that point, wouldn't we have some Eighth Amendment issues in terms of excessive fines? You would get – how many pieces of pipe were there? 2,500. 2,500? Yes. And that would be? $12 million. $26 million. The low end, it would be $12 million. The penalty range is $5,000 to $10,000, so at the low end, it would be about $12 million. And that would be a fine under my hypothetical. You don't have to tell me my hypothetical is wrong. That would be a fine of up to $25 million in a case in which your client suffered no damage. Well, we would argue we did suffer damage. I know, but I've asked you to assume. If I make your assumption, then that raises an Eighth Amendment question, but it's not ripe for decision yet because nothing has been assessed. The penalty hasn't yet been assessed. Once it's assessed, then the analysis that Your Honor posits would be applicable, and we would have to then come in and show the harm and show that it's not grossly disproportional. So, yes, that would be the proper course. But the issue isn't ripe here. The district court didn't rule on that basis, and I don't think this court wants to rule in the abstract without an actual award on whether an award might or might not. And, frankly, we would be entitled to make a record under the Eighth Amendment of the harm that flowed from the scheme, which we never had to do because the district court didn't go down that road. So I certainly want to be able to address the damages issue here, but I don't know if the court will indulge me to do that now or later, but at some point I'd like to. Well, we're pretty significantly over time, and I'm assuming that you're going to still want some time for rebuttals. So why don't we hear from Mr. Clement, and then we'll see where we are on time. Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court, Paul Clement for the appellees and cross-appellants. I'm going to endeavor to save two minutes for my cross-rebuttal. The Phase I trial here was a self-described train wreck, with the presiding judge entirely confused, I think understandably, about whether plaintiffs were pursuing an implied certification theory or a substandard products theory or something altogether different. And after sitting through the Phase II trial, the district court entered JAMAL against the plaintiffs in a ruling that eviscerated any claim that plaintiffs received substandard pipe with less longevity than some other hypothetically more compliant pipe. That ruling methodically rejected plaintiffs' experts, who purported to show that the pipe was deficient and less valuable. And plaintiffs have not even appealed the Daubert rulings against them on damages. The district court further ruled that plaintiffs had utterly failed to show that the pipe that they received was valueless, as even five years ago it had already functioned perfectly well for 12 or 22 years and we're five years past that. So we've got pipe that's been in the ground for 25 years, and it's functioned appropriately. The JAMAL decision was entirely correct. And just to take a step back, I think part of the confusion here really stems from the, I think, ultimately legally invalid nature of the False Claims Act theory that went to the jury in Phase I. Because this would be an easy case if some pipe had failed. If some pipe had failed, there'd be obvious damages. The pipe hadn't worked as it was supposed to work. And somebody would have the pipe, and they could show, well, here, it was messed up. It wasn't what it was represented to be. But we don't have any of that. This pipe is working perfectly well. It is functioning perfectly properly. Does that matter for the liability theory, not the damages theory? Let's assume that I want to purchase Grade A eggs because I think Grade A eggs are of a certain quality. And you say I'm sending you all Grade A eggs, and you never check. You just send me whatever eggs you have. It turns out all the eggs you send me are fine. Some are Grade A. Some aren't. Isn't that still a false claim? I don't think so, Your Honor. You've made a representation to me that I'm sending you all Grade A. You know it's not true. And it was material to my decision to buy. So this goes to the Phase I jury. Why isn't that a reasonable finding of liability? So as you described it, I think it would be a reasonable finding of liability. But if I promised you that I was going to give you 12 Grade A eggs, and we get a whiz-bang process for doing it and for getting you those eggs, and I got you 12 Grade A eggs, and somebody said, well, you know, your process wasn't exactly whiz-bang. I don't think that's a valid false claims act theory, especially when you go through the whole Phase II process, and you show that what they got was Grade A eggs, or they tried to put four experts on to show that their eggs were substandard in some way that made them worthless, and they failed. We've got a case out of this circuit that involved generators, the Delco-Remy generators, and some of them were mislabeled. Some of them were not Delco-Remy generators, but the court said the evidence was they worked exactly the same as Delco-Remy generators. They were every bit as good. But nonetheless, it was a false claim in that the requirements of the act, because they asked for Delco-Remy generators, and they didn't, and what you sent them, even though it was the absolute same equivalent, this is the ball bearings case, which comes out the same way. So their theory of the case, and the district court's theory, and we're in danger of conflating the JMOL and the jury verdict, was that we asked for an assurance that your stuff was being manufactured according to the processes that had allowed it to be certified. You knew it wasn't, or that all of it wasn't, but nonetheless you represented that it was. Why isn't that enough to establish penalty liability? Here's the thing that differs this from every false claims act claim I've ever seen. This isn't a representation about something that goes to eligibility. So this is not, you know, we're a disadvantaged business enterprise. It turns out you're not, so you shouldn't have gotten anything. Those cases are different. The district court correctly observed this is not an eligibility claim. And then it's a question of, you know, we represented that we were going to provide pipes that were compliant with AWWA C900 and UL 1285 for just one project. Mostly it's the AWWA C900, that's the certification. We said we were going to give those products. Now, what they have done is they have said that's actually not just a representation that you're going to give those products, but it's a representation that you are going to have a manufacturing process that involves uniform compliance such that we get to find a liability finding in phase one. Under their theory, they think they get to have a liability finding even if none of the plaintiffs in this case receive substandard pipe. If we shipped it to some, we messed up one batch of pipe and shipped it to some third party, they think that's enough to violate the representation of uniform compliance. Well, and you correctly described their theory, but I'm not sure you correctly described your representation. When I look at the submissions and the brochures, they not only represent that what we will deliver to you is whatever compliant, they represent that they are manufactured and tested in a way as to be compliant. Do they not? Principally, their theory, and I think this is maybe — No, no. I'm asking what the brochures say. The brochures principally say we're going to give you pipe that complies with these standards. Don't they say more than that? I don't really think they do. With respect, Your Honor, they extrapolate all of that, because they basically say if you — I mean, their theory in a nutshell is if you represent that you're going to give us AWA 900 pipe, that means you're going to have a manufacturing process that complies with that. If you look at some other pipe institute material that's cross-referenced there, that is going to tell you that you use whiz-bang procedures for all your pipe. And that's why if you look at the jury verdict, what the jury verdict wrote in their own hand for every one of these misrepresentations is uniform compliance. Now, I don't think they got that. I mean, we can debate. Maybe they got that from something in a pamphlet. But I think part of the reason you had the problem with the colloquy with my friend on the other side is they think just if we get up and say our pipe is AWWA 900, they think that alone represents that our manufacturing process for every pipe we've ever produced and sent to third parties is fully compliant and we've never changed our process in any way, shape, or form. That is a nonsense false claims act theory. It doesn't tie it to the pipe that any one of these plaintiffs received. And don't take my word for it. Take my friend's word for it. When he gets up in his closing argument rebuttal in the first phase jury trial, the first thing he tells the jury is we do not have to show that any pipe that we received is substandard. And that was their theory for a phase one jury. Well, why should we be surprised then in phase two because they got this crazy liability theory that says they don't have to show that any of the pipe they got is substandard. Why would we be surprised in phase two that they can't show any damage? I'm not surprised in phase two that they can't show actual damages. But I'm focusing on the phase one theory of liability. And what you're saying is, let's assume for a moment. We can go back and look at the representations. Let's assume your client had said, before you decide to buy any pipe from us, I want to let you know that we follow the standards, the relevant standards, and our pipe is tested and it shows that it complies with the relevant standards. And let's assume for a moment that during the time period, your client knew that at some points it wasn't following the relevant standards because it wasn't adhering to the same manufacturing process. And indeed, as to some of the strength testing, short-term strength testing, it knew that some 50 percent of its pipe wasn't meeting the test standards. If that's true, you're saying there's no false claims liability as long as what they received was every bit as good as the things that would have met the standard? I think yes here because the standards they want to bring into account here are standards that they say apply to the world. So they would basically say, and the 50 percent thing, by the way, is only for the UL 1285 thing, and that's only one project. Right. So with all due respect, with respect to everything else. I'm trying to give you a broad range because it seems to me your position is, and this is where I'm pushing back a little, your position is as long as they can't show what we gave them wasn't as good as what we promised them, there's no liability even for a penalty under the False Claims Act. That is your position. That is our position in this case because the representation goes to quality and the representation depends on they can find under their theory they have a sufficient finding of liability if we shipped bad pipe to a third party. And I think in a world where this Court's case law in the Kitsap case, and I'm not saying that right, the Kitsap case, and then there's the Cruz case from the Seventh Circuit, what these cases say is that it's not enough to bring a False Claims Act to just accuse the defendant of having shoddy practices. You have to tie that to a particular product the government received that was essentially negative affected by the practices that are inconsistent with the False Claim. So in the Cruz case out of the Seventh Circuit, there was a pharmacy and they were repackaging pharmaceuticals and some of the pharmaceuticals, by averages, somebody was getting pharmaceuticals that were past their expiration date or had been repackaged in a way that would have made them a False Claim. But they couldn't tie it to any one False Claim. Any one false set of prescriptions, any one ask for dollars in exchange for that prescription. And I think that's the way to make sense of the statute and I think it produces, it explains why we're in such a confused mess here after Phase I and Phase II. It just isn't right to let the plaintiff go up and say, I don't have to show that any piece of pipe at all that my clients received is substandard. But they said that out loud. I don't blame them for saying it because the district court... For penalties, is that your position? That if they don't show that the particular piece of pipe they received was substandard? Even if you made a false representation about that piece of pipe, it doesn't matter? Well, with respect, I think they need to have a theory that particular pieces of pipe that they received... With respect, I'm not asking about their theory. I'm just trying to figure out what your legal position is. For example, your brochure for the Big Blue says, meets AWWA C905, Underwriters Laboratory, et cetera. Yeah. As to some of these pieces of pipe, your client had no idea whether they met that standard, correct? Because, well, in fact, it knew that they weren't being manufactured according to the same process, and therefore didn't meet that standard because the standard requires that you continue to manufacture under the same process you got when it was approved. We don't think that's a fair reading of what Underwriter Labs requires. We don't think that's a fair reading of what the AWA requires. I don't want to spend, like, my whole time here fighting, having you perceive me to be fighting the Phase I jury verdict. I think the problem with the Phase I jury... Well, but you are fighting it. I think it's wrong because I think it embraces a theory of false claims act liability that is not a valid false claims act theory and ultimately doesn't even comply with Article III. Let me make things easier for you, then. Let's assume that the Phase I verdict, despite your argument, gets upheld. Could you address both the penalty, how big the penalty should be, and whether or not they've shown actual damages at Phase II? Sure. So let me start with the penalties because I think once I start talking about actual damages, I am not going to be able to resist going back and saying, and that shows that they don't have a valid claim in the first instance. So the penalties is discrete. I will assume you've made that argument every time. The penalties are discrete. And, you know, it's really a discrete issue. If you assume there's liability on the penalties, then it seems to me that it's pretty straightforward. As you've pointed out, the positions here are kind of polar. There's not an invoice-based theory of false claims. So we say it's per project. That's what the district court found on an issue where I don't think there's any benefit to the other side factors. You know, you don't take all the evidence in the light most favor to them. You just do the penalties. So the district court correctly recognized it's on a per project basis. Now, they have this theory that it's per pipe. Now, I think that's completely extravagant. It's completely extravagant in part because if you think the misrepresentation is from the brochure, well, then, or you at least think that the jury could find that the representation is from the brochure, all the pipe does is have an identification stamp. All it says is AWWAC900. That's all it says. So I wouldn't think that's a false representation at all. But even if it is, I think the other step in the analysis is you've got to get from a false representation and you've got to tether it and make it material to a request for payment. And the way these contracts work, they sort of made the agreement at the outset, maybe based on the brochure. But at that point, then, they're just, you know, they're making progress payments and people are inspecting to see if the pipe's stamped the right way. None of that is an independently actionable false representation. And I think, I mean, the theory is so extravagant, I think if you go back to the Bornstein case, it shows you why their theory is not viable. In that case, as you'll recall, the Supreme Court has got a debate about whether there's one actionable false claim for forfeiture, three actionable false claims for forfeiture, or 35. All right, there were 397 vacuum tubes. Each one, the Supreme Court said in its opinion, were falsely labeled. Nobody was arguing that there were 397 bases for forfeiture there. Because those are just labeling of the product. That's not an independent false representation that's material to a claim of payment. That may be a manifestation of a false claims act, that you've got a bunch of pipes that somebody says are labeled the wrong way. Or in the case of Bornstein, they said they're falsely labeled, every one of them. And yet nobody, none of the justices who were debating how many penalties said 397 is the right number. And, of course, if you launch into that idea that you're going to just count up the number of pipes or the number of vacuum tubes and make each one of them an actionable forfeiture basis or penalty basis, then you're going to have excessive fines clause issues all around. And so I think the looming excessive fines clause issue, whether it's perfectly ripe right now or not, is a very important kind of constitutional avoidance reason to say that the right way to measure these penalties is by project, not by piece of pipe. Before you turn to actual damages, which I know you want to, I want to make sure. I asked your friend some questions about the record. What I'd understood from the record was that nobody could say with perfect assurance that all pipe manufactured during this time period was manufactured according to the same processes and tested and found compliant with the standards, but that that wasn't necessarily true of every stick of pipe made during the period. Am I wrong about that? I don't think you're wrong about that. The way I understand my friend's answer to that is he – No, I understood his answer. Okay. I'm asking the question about the record. As I understood it, there was some testimony that at some point we determined that we changed our manufacturing process and that some of the testing didn't show the same results that it did before. But is that true of the entire period? I don't think it's true of the entire period. It wouldn't be true of the entire period. I think that that particular argument is actually a UL argument that only applies to one of the project and doesn't apply in the same terms to the AWWA projects where they're referenced to this PPI manual and that's what really sort of governs our manufacturing processes different. I'm sure my friend thinks that everything – you know, every piece of pipe we did wasn't by a perfectly kosher process. And he clearly thinks that that's enough. And I think part of the disconnect in this case is – and this gets to the actual damages number. I mean, they tried in the phase two. After phase one, they affirmatively disclaimed any obligation to show that any one piece of pipe was substandard. But they realized that was setting themselves up for a zero damages award, right? So in phase two, they shifted horses and they said, now we're going to show the judge and we're going to show the jury that we receive substandard pipe. And these violations of hypothetical standards resulted in pipe that would last less long in the ground. That's what they set out to prove in phase two. They failed miserably. They couldn't show – first they tried to say the pipe is valueless. Well, that doesn't pass the straight face test because you can't say something is valueless if the government's been using it for 22 years successfully and has no present, you know, intent to return it. So that theory didn't work and that completely distinguishes the Sixth Circuit case about the brake pads where the military deadlined every Jeep in the service because of these problems. So this is not some sort of problem that renders it valueless. So that's the first theory that they lose. The second theory is about consequential damages. They lose that because of Cook County. And then the third theory that's left is they've got a bunch of experts. They have four experts. They're going to try to go in there and say, all right, there's standard compliant pipe and it's going to last so long because you didn't have to do it in phase one. In phase two you have to finally confront the argument that we actually delivered substandard pipe. And they can't prove it at all. And then I know I'm running out of time here and do want to save those two minutes, but I'll say that's why I get back to the beginning of the case. If at the end of the case they've shown that they weren't injured at all by this representation because it didn't manifest itself in them actually receiving substandard pipe, well, what are we doing here? It's not a valid False Claims Act theory. I don't even think they have Article III standing. And I know it's sort of like a general notion that you don't have to have Article III standing in a False Claims Act, but I think that's because most of the claims are brought by the United States government and in its prosecutable capacity it doesn't need to show Article III standing. But we've got a bunch of municipalities here in federal court suing under a state False Claims Act statute. So I don't think they can be here unless they show Article III injury in fact. And if they've gotten pipe that works perfectly well for 12 or 22 years, I don't think they have any basis to be in court. And I think by the time you go through the whole phase two process and the district court realizes, wow, there's no difference in longevity, at least none that they can prove. I mean, at that point, I don't think we have a valid federal claim. The standing issue wasn't raised below. I don't think it was raised in those terms, but it's standing, so it's the beauty of it, right? It can be raised at any point. Does our generator case, doesn't it come out the other way? Our generator case says, at least the language of our generator case says, it doesn't matter if you suffered actual damages for purposes of having false act claim penalty liability. So I'd have to check. I mean, I don't know if you have the date on that case, but it was before TransUnion. I think that might explain the problem. Before TransUnion, you would have said, well, as long as you got a shot at penalties, that's good enough for standing. So TransUnion absolutely says that's not enough for standing. You have to show an independent article. Your argument then would be the same if this were a federal case. If it were a federal case, I would say, I mean, you know, maybe this. No, not to the federal government suing in an enforcement capacity. But do you think it applies to the state government pursuing an enforcement capacity? Under a state statute in federal court, absolutely. So I'll endeavor to save the rest of my time for rebuttal. Thank you. All right, so Mr. Hibbion, I'll give you the five minutes that you had requested for your rebuttal. Thank you, Judge Beatty. So I'm going to make one more run, a 30-second argument on penalties, and then I'm going to go to damages,  but I hold up a piece of pipe. It's made in this damages period. It says UL-1285. Is it true? I mean, I know my plants are not complying with the requirements of that process, and I hold up that stamp. Is that stamp true? Is it a false statement? Because the testimony is uniform. That's a statement that this pipe is made in accordance with UL-1285 requirements. Is that statement true? And actually, it's actually a slightly different question. Do I have any basis to believe this statement is true? Because if I'm recklessly disregarding it, that satisfies the statute as well. So in other words, if I say this pipe was made in accordance with UL-1285, and I don't really have a basis to even know that that's true. It's just who knows. Clear that's a false claim, and it's a false statement. And if it's a false statement, there's no constitutional avoidance. There's no interpretation that's ambiguous here that you need the Eighth Amendment to resolve. You're not avoiding an interpretation of a statute. The statute is clear. If it's a false statement and it's material, it's a penalty. So there's no constitutional avoidance argument in this case. The only argument is if the penalties are awarded and they get to this height, then that violates the law. What about your friend's standing argument that if you have no injury in fact, how do your clients have standing to bring this claim? The injury, in fact, is quite clear. It's the same injury as in the ball bearings case. It's the same injury as in the Kryzak case. In the Kryzak case, they couldn't show whether any of the patients were Medicare patients. The doctor was billing more than 24 hours a day, but the government couldn't say, well, the people you really didn't spend that time with were Medicare patients. The court said it didn't matter. You can't lie to the government. And the same is true in the Campy case. You can't lie to the government about how something is made and then say, well, you don't have standing. And it was an argument they didn't really make below, and they threw it. It was a throwaway argument here. If this court has any concern about that, we'd appreciate an opportunity to actually brief the judge. Let's get past Article III standing. Okay. So let's talk about damages. I mean, you said you were going to take 30 seconds on the first one. You're taking two and a half minutes. I did. I really would like to hear how your damages theory holds up if we find that the district court did not abuse its discretion in excluding your experts' reports under the Dalbert standard. Because the quick answer is the question of market value is a jury question in pretty much every case. There has to be some evidence in front of the jury from which it can make a determination. You agree that all of your evidence about actual damages came through your experts, yes? No, Your Honor. There was actual damage that was demonstrated by the fact that, again, we had this risk that we were living with, and that can cause the question is what is the market value of this pipe? If somebody puts this into the marketplace and they're truthful and they say this pipe complies. What was your evidence as to the actual market damage of the pipe? Our clients testified they wouldn't buy it. Other people testified nobody would. That's a recessory theory, and unfortunately you're keeping the pipe. So let's assume I don't buy the recessory theory and I'm just looking to find out what your damages were. How much less was the pipe worth than what you paid for it? Tell me if I'm wrong on this. Isn't the only evidence you sought to present on that evidence you sought to present through your experts? Well, let me go with the experts because the district court did not exclude the experts in their entirety. First of all, before trial, he let them all in. After trial, he excluded particular opinions. If you read the court's decision, the court said, well, when the expert said this is how long the pipe will last, I find that that's not supporting the doubt. I'm going to make things easier for you. Assuming that the district court did not abuse its discretion in excluding those opinions, do you have any other evidence of actual damage? Yes, Your Honor, because there were other opinions that were offered by our experts and not contradicted by their experts that there's a formula you use. In other words, if the test results go below this result, that creates a 20 percent, 30 percent, 40 percent discount in the lifespan. And that was not disputed at the trial. I may be wrong, but didn't the district court say the problem with that was that your expert was unable to say what 20 percent applied to, what 30 percent applied to, what 40 percent applied to, or what 50 percent? The district court did say that, did it not? The district court said that but then acknowledged that there was a consensus at the trial, that 100 years was the normal expected lifetime. No, the district court didn't say there was a consensus at the trial. It said that was what you offered. It didn't find that there was a 100-year lifetime. Well, Your Honor, I can read the defendant's expert conceding that point. Tell me what the district court found. Did the district court find that there was a 100-year expected life? The district court said there was not, and that's why it's reversible, because the district court ignored conflicting evidence on the point. Even the defendant's own expert, Dr. Folkman, conceded well-made pipe can reasonably be expected to last at least 100 years. There was JM admissions in brochures, in literature, that 100 years was a reasonable expectation. Now take me back and tell me what evidence that the district court did not exclude, because I have to view its exclusion under an abuse of discretion standard. Tell me what evidence the district court did not exclude that showed that would allow me to quantify how much of the pipe, how much less you got than what you bargained for. Well, Your Honor, that's a jury question, because the evidence that was not— It's only a jury question if there's evidence in front of the jury. So I'm asking you what evidence the district not excluded by the— you can argue the district court abused its discretion on the Daubert side. Put that aside for a second. The evidence that remained, tell me what evidence that remained in front of the jury that would allow a jury to find a quantification of damages based on that theory. Okay. The defendant's expert conceded the 100-year figure was a reasonable figure. I already—you don't need to re-argue that. I already told you— There was other literature that was admitted that was not excluded that also conceded 100 years as your starting point. You know, there's one reason that we're having difficulty with time, is I've asked you to assume that the 100 years was established. Okay. Now what I'm trying to do, and I'm also asking you to assume that your experts, the experts' opinions that were excluded was not an abuse of discretion. I'm trying to figure out what remained in the record before this jury that would allow them to quantify damages. There was no dispute that if the test results fall to certain levels, it corresponds to a percentage reduction in lifespan. And that was not disputed, that that form—because it was math. It was just basic scientific math. So if you do start—the district court said, I'm going to ignore the 100 years. That was error because there was conflicting evidence. But if you accept the 100 years is something that, viewed in the light most favorable to us, has to be accepted because there is evidence of that, then you're applying that percentage reduction from 100 years, and that allows you to come up with an expected lifetime. Applying against what? There's a quantity of pipe that was received. Yes. Do we know how much pipe fell 20 percent below the standards, how much fell 30 percent? Not with any decision, Your Honor. So that, in your view, the jury could have awarded something based on 20, something based on 50, something based on 40? I think the jury could have awarded full contract price because of a finding that the market— Yeah, but I've already told you that I don't buy that theory. So go back to this one. You know, this is an important part of the case. I'm trying to figure out whether the jury would just be speculating as to the amount of damage in the absence of the expert opinions because no one could tell me how much of this pipe fell 20 percent below testing standards or 30 percent or 40 percent or 50 percent. Even buying your—I buy everything else you've said so far. You don't need to argue. Everything else you've said for purposes of this question. Was there any way the jury could make that approximation? I appreciate the help, Your Honor. And the—yes, there was a way. Because the percentage of failure rates of the different tests was in the record. And so, for example, my colleague misspoke when he said the 50 percent was only UL. No, the 50 percent was the HDB test where their head of R&D said 50 percent of the time we're failing the HDB test. That's the longer test. The UL test, the testimony in the record, was we never passed that test. So the jury could have taken those failures, and the data was all in the record, and the jury could have said, okay, they failed by this much. That represents this much of a percentage reduction in useful life, and that's worth X dollars. So the jury did have the material in there to do it, but the district court took some of that away at the beginning of the trial and took a lot of the rest of it away later in the trial. Okay, now, last question on this point from me, at least. Sure. I asked you to start from the assumption that the district court was wrong in finding the 100-year or not finding the 100-year. Why was it wrong in not finding the 100-year? Because the evidence was conflicting, and the court is improper if you're viewing the record. But when I read the expert testimony, even putting aside what was excluded, I'm not sure there's any basis for an opinion that this pipe will last 100 years. Well, we put it in our brief, Your Honor, and I don't know that I'll be able to lay my hands on all the places. I thought the expert said something like, we generally expect pipe to last 100 years. Yeah, I mean, it was not a precise number. It was that it's reasonable to expect well-made pipe to last a minimum of 100 years. And so, again, the risk of any uncertainty under the Adrae case, under the Bigelow case, under a whole slew of cases, the risk of uncertainty, if there's uncertainty in the amount of damages and the amount of damage, that falls on the defendant, not on the victim. And so the district court did at one point, and like I said, we put it in the brief. I don't know if I can find you that. If it's in the brief, I'll find it. But the district court at one point conceded that there was testimony in the record about the 100-year figure. And like I said, you can quote, we quoted the defendant's own expert, Dr. Folkman, who said that's a reasonable assumption, that well-made pipe will last at least 100 years. Now, I understand he said at least, not pretending he said precisely. Of course, no one can say precisely. But there was an industry, largely an industry consensus, this 100-year figure in the record below, we introduced from many sources in literature where people just said this is a reasonable figure. Now, it's true that no one knows for sure because PVC pipe hasn't been around for 100 years. So no one can actually say, well, we've seen it in the ground, and here's when it fails. So it was conflicting. And I just found the place that I was trying to look at. It's at volume two of the excerpt of record, page 77. Here's a quote from the district court. Evidence was presented at the phase two trial that there is some expectation within the pipe industry that PVC pipe will last at least 100 years. And certain of the plaintiff's representatives held that same belief, not the experts. Some of JM's brochures referenced that figure. So that 100-year number came not only ñ and here's the quote from their expert, Dr. Folkman. This quotation, I don't think I have the record site for it here, but it should be in our brief. Quote, he ñ oh, this is also from the district court. I'm sorry.  Dr. Folkman, quote, concluded that 100 years is a reasonable estimate of the minimum expected life of PVC pipe that's properly manufactured and properly installed. So, I mean, with that much evidence in the record from their expert, from our lay witnesses, from their own brochures of this 100-year figure, then viewed in the light most favorable to us, I think that 100 years has to be accepted for this appeal. But didn't the district court exclude the opinions of both of your experts about the noncompliance rate? About the noncompliance rate? Yes. No, he did not exclude that. What he excluded is trying to extrapolate a number of years. His exclusion was quite specific, I think, if you go back and read the opinion. I mean, he wasn't always entirely clear what he was doing on that particular point. But what he said was, I don't find a sufficient basis to conclude that if the pipe will last so many years, like this pipe will last 20 years or 25. That's what he excluded. But I'm asking you, assume he was wrong on that. In order to prove damages, you'd have to show a noncompliance rate. Yes. And you had two experts, one using the minor's rule, and the district court said, I don't buy the minor's rule. Right. It doesn't meet any of the Dauber standards. And I thought he also excluded the other expert's opinion about the 44% noncompliance rate. He did. He did. Well, he. So, again, he may have been wrong in excluding those. But in the absence of some evidence of a noncompliance rate, how do we know how much damages you suffered? Your Honor, I don't believe the district court excluded all the evidence of the test results. And we could have simply put the test results in front of the jury and asked them to assess how often the pipe failed. We were trying to be precise. No, I understand. But did you put the test results in front of the jury? The test results were all in front of the jury. They were all in evidence. The district court felt, well, there's just not enough precision here in what they're doing, and I don't accept these calculations. But the test results were there. And the test results, I think, would have permitted the jury to say, okay, would it have been perfect? No, it would not have been precise. But, again, the risk of imprecision doesn't fall upon the government. The risk of imprecision falls on the party that's committing the fraud. And here, they committed a massive fraud. So I think that that's the answer. The short answer to your question is there's not going to be a precise answer, and I'm not going to pretend that there is. However, there is information from which a jury could exercise it. Because all it's trying to do is determine value. What is the market value of this pipe? And that is really a factual question that should not have been for the district court to determine. All right. Thank you, Mr. Havien. Thank you, Your Honor. All right. So, Mr. Clement, you pretty much have whatever time you want, since I gave Mr. Havien five minutes and he took 15. I was going to give you two minutes, so go for it. I'll try to keep this brief. I mean, I do think that Jamal's opinion speaks for itself. I think all of the evidence, they tried to show a market loss by showing the delta between the longevity of standard pipe and the longevity of the pipe that's delivered. And as the district court found in his Jamal opinion, they fell down on both parts of that. I don't think the 100-year illusion, because, you know, maybe it lasts 100 years, whatever. I don't think that's good enough on the former, but that's the least of their problems. Because they needed to show the delta, and they just had no valid evidence that there was reduced longevity for the pipe that was delivered. And that's where they were going to base their theory of showing that there was some real pocketbook market injury. It's just not there. Am I right in thinking the district court excluded the testimony of the experts of 44% and 45%? You are 100% right. Once today. And that's out of the case, and they didn't even appeal it. And so, you know, I almost don't know what to do with that. I mean, I think you could send this back, and then that would be law of the case. But they show no damages. I also would say that, you know, the Jamal opinion, if you look at it, part of the reason it's so devastating is it goes through in great detail and shows that these standards from the AWWA and UL don't go to longevity at all. That's not what they're there to test. They don't even test the finished pipe. They test the pipe material, and they test it for things other than longevity. And so that's why their theory just falls down on a number of levels. But here's the last thing I want to say before I sit down, which is, what are the implications for that, for the Phase I finding now? What are the implications of showing no damages from this supposed massive fraud scheme? Well, I think it really undermines that Phase I verdict as a matter of law, both because you can't have a false claim in the abstract. You have to show that there were specific false claims. By an accident of history, I happen to have argued the Kryzik case they're relying on. And in that case, you had a bunch of doctors, and they billed for more than 24 hours in one day. And so you weren't sure which one was the one that they couldn't possibly have billed for, but you knew that, like, eight of them were in excess of 24 hours. And you said, okay, those are the false claims we're going to bring, because we know that at least eight of these claims are false. That's the kind of imprecision that the government gets the benefit of. But you don't get the benefit of going into federal court as a municipality and show no injury and then say that's enough for a false claim when I affirmatively disclaim any requirement to show that the pipe I received was substandard. And I'll just finish with this. I mean, there's kind of two competing world views out there. You can either bring a false claims act in this kind of abstract, messy way and get 11 years of proceeding and no actual damages, or you can wait until some pipe breaks, you dig it up, you look at it, you find it's deficient, you bring your false claim. At that point, nobody's got a question about whether you suffered Article III injury or whether the pipe was substandard. I mean, I don't think you want to create the incentive for more cases like this. And, you know, there's a lurking issue out there, which if you say, well, they just got over the threshold of showing a couple of penalties here, even though there's absolutely no damages, they have waiting in the wings a claim for $50 million in attorney's fees. So if you want to create incentives for lots more cases like this, then I suppose you should say this is good enough. But if you want to say false claims act should be brought by municipalities that suffer real Article III, real world injuries, then I think you should reverse across the board in terms of the Phase I liability. And, of course, that would wipe out the whole case. Thank you, Your Honors. Thank you. Counsel, thank you both for your arguments this afternoon. They were very helpful. We're happy to see that you've recovered from your bike accident. And we are adjourned.
judges: O'SCANNLAIN, HURWITZ, BADE